**IN THE UNITED STATES DISTRICT COURT**

**DISTRICT OF NEW MEXICO**

R. GREG CORY,

Plaintiff,

v. No. Civ. 06-0993 LH/DJS

ALLSTATE INSURANCE,
ALLSTATE FINANCIAL SERVICES, LLC,
and LUKE YANG, individually and as
agent or employee of ALLSTATE INSURANCE,

Defendants.

**MEMORANDUM OPINION AND ORDER**

On November 13, 2007, Defendant Allstate Insurance and Allstate Financial Services, LLC, (hereinafter "Defendants" or "Allstate") filed an Amended Motion for Summary Judgment (Doc. 60). The Court, having considered the motion, briefs, evidence, and applicable law, concludes that the motion should be granted.

## I. BACKGROUND

Plaintiff R. Greg Cory ("Plaintiff") was an Exclusive Financial Specialist for Allstate whose relationship with Allstate was governed by the L2000S Exclusive Financial Specialist Independent Contractor Agreement (hereinafter "Contract"). *See* Allstate's Motion for Partial Dismissal (Doc. 8), Ex. 1 at App. 0002-03. Plaintiff's duties included selling life insurance policies and other financial services to customers. *See* Contract § II. According to the Contract, Plaintiff was responsible for hiring, supervising, and training his employees. *See id.* § III. No employee of Plaintiff's was deemed an employee or agent of Allstate. *See id.* At the time the Contract was in effect, Kathy Logan worked as a full-time licensed agent and office assistant under Plaintiff's supervision. Defs.' App. in Supp. of their Am. Mot. for Summ. J. filed on Nov. 13, 2007 (Doc. 62)

(hereinafter "App.") at 0002, 0046.

The Contract specifically incorporated the Exclusive Financial Specialist Independent Contractor Manual ("EFS Manual") and the Exclusive Financial Specialist Agency Standards ("Agency Standards"). Contract § I(C). The EFS Manual states: "You are expected to comply with Company policies and procedures, including the Allstate Agency Standards, and all applicable laws and regulations relating to the conduct of business under the L2000 Agreement. Second, you may never falsify any state insurance department or Company documents, including applications, and you may never forge signatures." App. 0037. The Agency Standards provide: "No one is allowed to sign on behalf of another person, even if it is done to accommodate a customer and with the customer's expressed consent (written or verbal). The unauthorized signing of a document is a forgery." *Id.* Plaintiff acknowledges that Allstate policies require a witness to a signature to actually witness that signature. *See id.* 0050.

In August 2004, an employee of Lincoln Benefit Life ("LBL"), an Allstate affiliate that underwrites policies marketed through independent agencies, such as Plaintiff's agency, noticed discrepancies in the signature of a customer, Edward Dominguez, who obtained his policy through Plaintiff's agency. Defs.' Am. Mem. (Doc. 60), Undisputed Fact ("UF") ¶ 4. When LBL notified Allstate of the discrepancies, Allstate assigned Luke Yang, an Allstate Corporate Security Investigator, to investigate the signatures. *Id.*, UF ¶ 5. Mr. Yang was and is an Allstate employee. *Id.* Prior to commencing the investigation, Mr. Yang had never met or heard of Plaintiff. *Id.*

Mr. Yang began his investigation by reviewing all the life insurance documents purporting to be signed by Mr. Dominguez. *Id.*, UF ¶ 6. Mr. Yang identified four documents that potentially contained non-genuine signatures: (1) a Policy Change Request Form dated June 17, 2004; (2) a

Policy Value Summary dated July 7, 2004; (3) an Amendment of Application dated August 9, 2004; and (4) a Policy Illustration Form dated August 9, 2004. *Id.* Mr. Yang also interviewed Mr. Dominguez, Plaintiff, and Ms. Logan. *Id.* Mr. Dominguez told Mr. Yang during his interview that he did not remember ever having signed the four documents referenced above and did not recognize the signatures on those four documents as his own. *See id.*, UF ¶ 7; App. 0002.

In Mr. Yang's interview with Plaintiff, Plaintiff stated that he did not sign Mr. Dominguez's name to any of the four documents. App. 0002. Plaintiff told him that in October 2004 Ms. Logan admitted to him that she forged Mr. Dominguez's name to all four documents. *Id.* at 0024-25. Plaintiff also admitted that he signed the June 17, 2004 Policy Change Request Form without actually witnessing Mr. Dominguez sign the document. *See id.* at 0025, 0059.

In Ms. Logan's interview with Mr. Yang, before he turned on the tape recorder, Ms. Logan told him that she "had signed them," referring to the documents they were about to review. Pl.'s Resp. to Mot. for Summ. J. (Doc. 67) ("Pl.'s Resp.), Ex. 1 at 93.[1] Later in the recorded portion of the interview, Ms. Logan said that she forged Mr. Dominguez's signature on the two August 9, 2004 documents. App. 0002. Ms. Logan told Mr. Yang that she did not recognize Mr. Dominguez's signature on the June 17, 2004 document and the July 7, 2004 Policy Value Summary. *See id.* at 0002, 0067-69. Mr. Yang interpreted these statements to mean that Ms. Logan did not forge Mr. Dominguez's signatures on the June 17th and July 7th documents. *See* App. 0002; Pl.'s Resp., Ex. 3 at 98-99. In a June 13, 2007 deposition, however, Ms. Logan stated that she believed that she wrote Mr. Dominguez's signature on the July 7, 2004 document. *See* App. 0069; Pl.'s Resp., Ex.

[1]Mr. Yang does not remember any such statement made by Ms. Logan before he turned on the tape recorder. *See* Pl.'s Resp., Ex. 3 at 101. Mr. Yang did not include this admission by Ms. Logan in his Summary of Evidence. *See* App. 0023-27.

1 at 92-93.

After completing these interviews, Mr. Yang submitted the June 17, 2004 and July 7, 2004 documents to Judith Housley, a certified document examiner. *See* App. 0003; Defs.' Am. Mem., UF ¶ 10. He also gave her documents that Mr. Dominguez identified as containing his genuine signature as well as handwriting exemplars from Plaintiff and Ms. Logan. *See* App. 0003; Defs.' Am. Mem., UF ¶ 10. Mr. Yang asked Ms. Housley to give her opinion as to the author of Mr. Dominguez's signatures on the June 17th and July 7th documents. *See* App. 0003, 0020-22.

In a report dated January 18, 2005, Ms. Housley opined that the signature of "Edward Dominguez" on the June 17, 2004 document was an authentic signature. *Id.* at 0020-22. As to the July 7, 2004 document, Ms. Housley wrote, "the questioned signature of 'Edward Dominguez' is authored by 'Robert Greg Cory.'" *Id.* at 0021-22. Ms. Housley submitted her report to Mr. Yang, but he never discussed the opinion with her. *See* Pl.'s Resp., Ex. 2 at 23-24.

At the end of his investigation, Mr. Yang drafted a "Summary of Evidence" describing his investigation and offering his conclusions. App. at 0003. He concluded:

> The weight of the evidence uncovered during our investigation was sufficient to support the conclusion that Cory forged customer Dominguez's signature on the July 7, 2004 Policy Value Summary. . . . In her January 18, 2005 written report, . . . . Judith Housley advised us that Cory forged Dominguez's signature on the document. Further, former Support Staff Employee Logan admitted to signing Cory's name and forging Dominguez's signature on the August 9, 2004 Amendment of Application and the August 9, 2004 Policy Illustration. Thus, the evidence uncovered during our investigation was sufficient to support the conclusion that Cory breached his Allstate L2000S Exclusive Financial Specialist Independent Contractor Agreement.

*Id.* at 0026. On February 7, 2005, Mr. Yang e-mailed his Summary of Evidence to Michael Clark, Allstate's Field Vice President for the Southwest Region. Defs.' Am. Mem., UF ¶ 13. Following his submission, Mr. Yang was not contacted by anyone at Allstate concerning his investigation. *See*

App. 0003; Defs.' Am. Mem., UF ¶ 15. He does not keep track of how often Allstate follows his recommendations, because Allstate does not pay him enough money to pay attention to that. *See* Pl.'s Resp., Ex. 3 at 106-09.

Allstate's management in the Southwest Region reviewed the Summary of Evidence and determined that Plaintiff violated Allstate policies and procedures. Defs.' Am. Mem., UF ¶ 14. Gerald Salas, Human Resources Manager for Allstate's Southwest Region, produced a Request for Termination, the information of which was taken from the Summary of Evidence and the Contract. *See* Pl.'s Resp., Ex. 4 at 11-12, 14; App. 0005. Steve Cardinal, the regional distribution leader, asked Mr. Salas to make sure he was confident in the accuracy of the handwriting expert's opinion. *See* Pl.'s Resp., Ex. 4 at 16-17. In response, Mr. Salas contacted Dave Mueller at Corporate Security and discussed the handwriting expert's opinion. *See id.*, Ex. 4 at 15-16. Mr. Salas, however, believed he had no reason to doubt the expert's opinion that the client's signature was made by Plaintiff, especially given the evidence that there had been a lot of unauthorized signatures going on in the office. *See id.*, Ex. 4 at 28. Allstate's regional leadership team thus recommended to the Allstate EA/EFS Steering Committee that Plaintiff's Contract be terminated. *See* Defs.' Am. Mem., UF ¶ 14; App. 0005-06. Based on Mr. Yang's Summary of Evidence and the recommendation of the leadership team, the Steering Committee decided to terminate the Contract. *See* Defs.' Am. Mem., UF ¶ 15; App. 0006. On March 1, 2005, Allstate notified Plaintiff that it was terminating the Contract. Defs.' Am. Mem., UF ¶ 16.

By-laws of the National Association of Securities Dealers ("NASD") require securities dealers to fill out a "Form U5 Uniform Termination Notice for Securities Industry Registration" (hereinafter "Form U-5") within 30 days of the termination of a registered representative, such as

Plaintiff. *See* Defs.' Am. Mem., UF ¶ 17; App. 0040; NASD By-Laws, art. V, § 3(a), *available at* http://finra.complinet.com (follow "By-laws" hyperlink; then follow "Article V" hyperlink). The NASD requires that the Form U-5 indicate the reason for the registered representative's termination. Defs.' Am. Mem., UF ¶ 17.[2]

On March 9, 2005, Phillip Hoeh, the former Chief Compliance Officer for Allstate, drafted and filed with the NASD a Form U-5 regarding Plaintiff's termination. App. 0008. Mr. Yang had no role in filing the Form U-5. *Id.* at 0003. Under "Reason for Termination," Allstate averred:

---

[2]The New York Court of Appeals in *Rosenberg v. MetLife, Inc.*, 866 N.E.2d 439 (N.Y. 2007), explained the significance of a Form U-5:

> The NASD stores the Form U-5 on its Central Registration Depository (CRD), an on-line registration and licensing database used by regulators throughout the securities industry to register, license and regulate securities firms and their brokers. Through one component of the CRD called "Broker-Check," the NASD allows investors to obtain certain information about individual brokers and registered securities firms. . . . Upon specific request, the NASD will release "disclosure information" – information pertaining to criminal actions, civil actions, customer complaints and securities-related terminations for cause – via mail or e-mail within two days of the request. The NASD gathers such disclosure information from the information provided by the individual broker on the Form U-4 . . . , not from a former employer's Form U-5 . . . .
>
> Certain information found on a terminated employee's Form U-5 can appear on BrokerCheck indirectly through the employee's responses to questions on the Form U-4. For example, question 14J of the Form U-4 requires a broker to state whether he or she has been discharged after allegations were made accusing the broker of "violating investment-related statutes, regulations, rules, or industry standards." The Form U-4 also contains a disclosure reporting page that corresponds to question 14J. The disclosure reporting page directs the broker to detail the allegations made by the prior employer (on the Form U-5) and allows the broker to rebut or comment on the termination. The Form U-4 statements, in turn, are subject to disclosure to investors through Broker-Check. The NASD further provides a procedure for brokers to seek expungement of defamatory statements contained in the CRD.

*Id.* at 441 n.3.

"Failure to follow firm[']s policy and procedures due to non[-]genuine customer signatures on account documents." *Id.* at 0050. Section 7F of Form U-5 under "Termination Disclosure" asks:

> Did the individual voluntarily *resign* from your firm, or was the individual discharged or permitted to *resign* from your firm, after allegations were made that accused the individual of:
>
> 1. violating *investment-related* statutes, regulations, rules or industry standards of conduct?
> 2. fraud or the wrongful taking of property?
> 3. failure to supervise in connection with *investment-related* statutes, regulations, rules or industry standards of conduct?

*Id.* at 0042 (emphasis in original). Allstate answered "YES" to question 1 and "NO" to questions 2 and 3. *Id.*

The NASD conducted an investigation into the allegations against Plaintiff in which it sought certain information from Plaintiff. *See id.* at 0051-52, 0056-58. In response to the NASD's inquiries, Plaintiff stated that Ms. Logan signed Mr. Dominguez's name to the four documents at issue and admitted that he was "guilty of sloppy supervision on the Dominguez case." *Id.* at 0061, 0063. During the NASD inquiry, and again later in his deposition, Plaintiff also admitted to signing his own name on the June 17, 2004 Policy Change Request Form as a witness to Mr. Dominguez's signature without having witnessed it. *See id.* at 0056, 0059. Plaintiff also admitted in his deposition that he was responsible for his employees. *See id.* 0048.

On August 3, 2007, Ms. Housley explained during her deposition that the person who authored "Edward A. Dominguez" on the July 7, 2004 document was the same person who authored "R. Greg Cory" on that document. *See* Pl.'s Resp., Ex. 2 at 17-19. Later in her deposition, however, she clarified that she compared the signature of "Edward A. Dominguez" on the July 7, 2004 document to known signature samples from Plaintiff, and based on that comparison, she concluded that Plaintiff authored Mr. Dominguez's signature on the July 7th document. *See* App. 0018-19.

Plaintiff must self-report the reason for his termination from Allstate to other companies. *See* Pl.'s Resp., Ex. 5 at 109-13. He attaches long letters of explanation and the letters from the NASD investigation, which cleared him of all wrongdoing and left his licenses in good standing. *See id.* Some companies have since contracted with Plaintiff, but others have not. *Id.*

**II. PROCEDURAL HISTORY**

Plaintiff filed a nine-count complaint against Allstate and Mr. Yang. Defendants and Mr. Yang filed motions to dismiss, seeking to dismiss all claims except the defamation claim against Allstate. The Court granted the motions in part, dismissing all Plaintiff's claims against Allstate, except the defamation claim, and dismissing all claims against Mr. Yang, except Plaintiff's claim for tortious interference with contractual relations. Plaintiff subsequently voluntarily dismissed the last remaining claim against Mr. Yang with prejudice. *See* Stipulation and Order of Dismissal with Prejudice (Doc. 52). Consequently, the only claim that remains in this case is Plaintiff's defamation claim against Allstate.

Defendants filed a Motion for Summary Judgment (Doc. 55) on October 24, 2007, and a motion to extend the page limit for their attached exhibits. The Court, however, denied the motion to extend the page limit in part. *See* Order (Doc. 59) at 3. Defendants subsequently filed an Amended Motion for Summary Judgment (Doc. 60), seeking judgment on Plaintiff's defamation claim. Defendants' Motion for Summary Judgment (Doc. 55) is therefore moot.

**III. STANDARD**

Summary judgment is appropriate only if "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter

of law.'" *Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co.*, 52 F.3d 1522, 1527 (10th Cir. 1995) (quoting Fed. R. Civ. P. 56(c)). "All facts and reasonable inferences must be construed in the light most favorable to the nonmoving party." *Id.* (internal quotations omitted). Under Rule 56(c), the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Rather, only disputes of facts that might affect the outcome of the case will properly preclude the entry of summary judgment. *Id.* at 248.

Initially, the moving party bears the burden of showing that no genuine issue of material fact exists. *Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir. 1993). Once the moving party meets its burden, the nonmoving party must show that genuine issues remain for trial. *Id.* The nonmoving party must go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *See id.*; *Kaus v. Standard Ins. Co.*, 985 F.Supp. 1277, 1281 (D. Kan. 1997) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *See Anderson*, 477 U.S. at 248.

## IV. ANALYSIS

Allstate contends it is entitled to summary judgment on Plaintiff's defamation claim because the statement in the Form U-5 is true and privileged. Allstate argues that an absolute privilege, or at the very least a qualified privilege, applies to statements in a Form U-5, and that in either case, Allstate was privileged to make the statement. Plaintiff argues that the statement in the Form U-5 was false, only a qualified privilege applies to such statements, and that Allstate abused the

conditional privilege.[3] Because the Court concludes as a matter of law, based on the undisputed facts, that the statement in the Form U-5 is substantially true, the Court need not determine whether a privilege applies.

Under New Mexico law, a plaintiff must prove the following elements to establish a claim for defamation: (1) a publication by the defendant, (2) of an asserted fact, (3) which is defamatory, (4) communicated to a third person, (5) of and concerning the plaintiff, (6) and proximately causing injury to the plaintiff. *Schwartz v. American College of Emergency Physicians*, 215 F.3d 1140, 1144 (10th Cir. 2000) (citing *Newberry v. Allied Stores, Inc.*, 108 N.M. 424, 773 P.2d 1231, 1236 (1989)). A statement is deemed defamatory if, among other things, the statement imputes some falsity that

---

[3]Plaintiff also argues that Allstate defamed him when Allstate management officials told multiple Allstate financial consultants that Plaintiff had been fired for a forgery. *See* Pl.'s Resp. at 9. Plaintiff's only evidence of these additional allegedly defamatory statements is his own deposition testimony in which he states that he had been told by other exclusive financial specialists that they were told that Mr. Cory was terminated for forgery. *See id.*, Ex. 5 at 96-97, 161-62. Plaintiff's statement about what others told him about what Allstate officials told them is hearsay, because he is offering it to prove the truth of the matter asserted – that Allstate officials told multiple financial consultants that Plaintiff had been fired for forgery. *See* Fed. R. Evid. 801. As such, the statement is inadmissible at trial. *See* Fed. R. Evid. 802.

The Court cannot rely on this inadmissible hearsay evidence when ruling on the motion for summary judgment. *See Wright-Simmons v. City of Oklahoma City*, 155 F.3d 1264, 1268 (10th Cir. 1998) ("While the party opposing summary judgment need not produce evidence in a form that would be admissible at trial, . . . the content or substance of the evidence must be admissible. Hearsay testimony cannot be considered because a third party's description of a witness' supposed testimony is not suitable grist for the summary judgment mill.") (internal citations and quotations omitted); *Gross v. Burggraf Const. Co.*, 53 F.3d 1531, 1541 (10th Cir. 1995) (holding that court, in ruling on summary judgment motion, could not consider plaintiff's response to interrogatory regarding what another person told her that he had heard because it was double hearsay and plaintiff had not shown that exception to hearsay rule applied); *Thomas v. Int'l Business Machines*, 48 F.3d 478, 485 (10th Cir. 1995) (noting that if plaintiff in her affidavit is testifying to what other employees told her about what IBM agents in turn told them, testimony could constitute inadmissible hearsay). Accordingly, in ruling on the motion for summary judgment, the Court will only consider the statements made by Allstate in the Form U-5.

prejudices plaintiff in his profession or trade. *See Newberry*, 108 N.M. at 429. Truth is a defense in a private plaintiff defamation action, and thus, the defendant has the burden to prove the truth of the statement. *Id.* at 430. "The law of defamation overlooks inaccuracies and focuses on substantial truth." *Schwartz*, 215 F.3d at 1146. Consequently, substantial truthfulness is a defense to a defamation action. *Id.* at 1146-47 (holding that defamation action could not stand because, although defendant's statement was technically inaccurate, the gist of it was substantially true); *Ammerman v. Hubbard Broadcasting, Inc.*, 91 N.M. 250, 254 (Ct. App. 1977) ("Substantial truthfulness is a defense to an action for defamation.").

Here, in answer to the reason for Plaintiff's termination, Allstate responded: "Failure to follow firm[']s policy and procedures due to non[-]genuine customer signatures on account documents." Contrary to Plaintiff's argument, Allstate did not assert in the Form U-5 that Plaintiff forged any signatures; rather, the form is silent as to who made the non-genuine customer signatures. While the Form U-5 does indicate that Plaintiff was the person who failed to follow Allstate policies and procedures, the following undisputed facts establish that this assertion is true: the signatures purporting to be of Mr. Dominguez on four documents were not made by Mr. Dominguez; Kathy Logan worked for Plaintiff as his office assistant; Ms. Logan admitted to forging at least two of Mr. Dominguez's signatures; Plaintiff admitted to signing that he witnessed Mr. Dominguez's signature, when in fact, he did not witness it; Allstate's policies require a witness to a signature to actually witness that signature and forbid forging signatures or signing on behalf of another person; the Contract recognizes that Plaintiff could arrange for employees to conduct business "on [his] behalf"; and Allstate terminated the Contract because it discovered the non-genuine signatures. Because Plaintiff's employees worked on his behalf, Ms. Logan's failure to follow Allstate policies can be

attributed to him. Plaintiff, in fact, admitted in his deposition that he was responsible for his employees. *See* App. 0048. Although it is not true, construing the evidence in Plaintiff's favor, that Plaintiff was the person who forged the signatures, it is undisputed that Allstate terminated the Contract because it discovered non-genuine customer signatures on documents prepared by his office. Moreover, Plaintiff acknowledges that he violated Allstate policies when he signed as a witness to Mr. Dominguez's signature when he did not actually witness the signature. Plaintiff's violation proved significant when it was revealed that the signature he purportedly witnessed was not a genuine customer signature of Mr. Dominguez. Because the statement on the Form U-5 does not actually state that Plaintiff himself forged the signatures, Allstate did indeed terminate Plaintiff "due to non-genuine customer signatures," and Plaintiff did violate Allstate policies related to the non-genuine signatures, the statement in the Form U-5 is substantially true.

Furthermore, the statement in ¶ 7F of Form U-5 is also true: "allegations" had been made that accused Plaintiff of violating investment-related statutes, regulations, rules, or standards of conduct. It is undisputed that Ms. Housley in her report opined that Plaintiff had forged one of the signatures. It is therefore true that an "allegation" had been made against Plaintiff himself. Paragraph 7F does not assert that Plaintiff, in fact, violated the statutes. The statement in ¶ 7F is therefore also true.

Because the undisputed facts in the case demonstrate that the statements in the Form U-5 are true, and thus not defamatory, there is no genuine issue of material fact for trial. Accordingly, Defendants are entitled to summary judgment on Plaintiff's defamation claim.

**IT IS THEREFORE ORDERED** that

1. Defendants' Motion for Summary Judgment (Doc. 55) is **DENIED** as **MOOT**; and
2. Defendants' Amended Motion for Summary Judgment (Doc. 60) is **GRANTED**.

SENIOR UNITED STATES DISTRICT JUDGE